**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOSHUA W. ROLAND,            )

         Plaintiff,       )

                            )    Civil Action No. 3:20-144

    v.                  )

                            )    Magistrate Judge Patricia L. Dodge

OFFICER MARK GENSAMER,    )

        Defendant.    )

                            )

                            )

## **MEMORANDUM OPINION**[1]

Before the Court is Plaintiff Joshua W. Roland's Motion for Leave to Amend the Complaint (ECF 58) in which he seeks to terminate the current defendant and add two new defendants to this case. For the reasons that follow, the Court will deny Roland's motion.

## I.    **Relevant Background**

Roland, who is proceeding *pro se*, commenced this civil action on or around July 27, 2020 by filing a motion for leave to proceed in forma pauperis. At the time, Roland was incarcerated at the Blair County Prison. The Court granted Roland's motion on August 20, 2020 and the Clerk of Court filed the Complaint (ECF 19) on that date.

In the Complaint, Roland named as Defendants the Blair County Prison, Warden Abbie Tate and Officer Mark Gensamer. Roland alleged that on July 11, 2019, Gensamer, an officer who handles inmates' incoming and outgoing personal mail at the Blair County Prison, rejected a personal letter to a family member that Roland sought to mail. (ECF 19, ¶ 3.) Roland alleged that

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

Gensamer rejected the letter for mailing "because of a piece of tape sealing the envelope shut (which was considered 'contraband.')." (*Id.* ¶ 10.)

According to the Complaint, Gensamer opened and read Roland's July 11, 2019 letter. Something in the content of the letter prompted him to call the Hollidaysburg Borough Police Department, which then issued a search warrant for Roland's cell phone. (*Id.* ¶ 11.) The police officer who served the search warrant on Roland on July 13, 2019 told him "that it was being served because of 'something with a letter you wrote.'" (*Id.* ¶ 12.) Gensamer did not notify Roland that his letter was rejected. (*Id.* ¶ 13.)

The Complaint brought claims under 42 U.S.C. § 1983 against each of the original defendants (Gensamer, Warden Tate and the Blair County Prison), asserting that the failure to notify him that his letter was rejected and not mailed violated his right to procedural due process afforded to him under the Fifth and Fourteenth Amendments. (*Id.* ¶¶ 4, 7, 9, 14.)

On October 27, 2020, after Roland paid the initial partial filing fee and the Court screened the Complaint in accordance with the provisions of the Prison Litigation Reform Act, the Court ordered the U.S. Marshal Service to serve the Complaint. On November 25, 2020, Defendants' attorney ("Defense Counsel") entered her appearance and filed a waiver of the service of summons on their behalf. (ECF 28, 29.)

Defendants moved to dismiss the Complaint. (ECF 34.) The Court granted in part and denied in part their motion in an order dated August 23, 2021. (ECF 42.) Specifically, the Court denied Defendants' motion to the extent it sought the dismissal of the Fourteenth Amendment procedural due process claim asserted against Gensamer. The Court granted Defendants' motion to the extent that it: (1) dismissed with prejudice all claims against the Blair County Prison and the

2

Fifth Amendment due process claims brought against all defendants; and (2) dismissed without prejudice the official capacity claims against Gensamer and Warden Tate and the Fourteenth Amendment procedural due process claim asserted against Warden Tate in her individual capacity.

Roland had the option to file an amended complaint to attempt to cure the pleading deficiencies with respect to those claims the Court dismissed without prejudice. He opted not to do so. (ECF 43.) Thus, following the disposition of Defendants' motion to dismiss, the only remaining claim is the Fourteenth Amendment procedural due process claim asserted against Gensamer.

On September 13, 2021, Gensamer filed a verified Answer and Affirmative Defenses to the Complaint. (ECF 45.) In it, Gensamer averred that he was not involved in the rejection of Roland's July 11, 2019 letter because he was on vacation as of July 9, 2019 and did not return to work until July 14, 2019. (ECF 45 ¶¶ 3, 10-11, 13, 38.)

The Court held the initial case management conference on October 26, 2021. By this time, Roland was no longer incarcerated, having been released from the Blair County Prison on February 22, 2021. (ECF 40). Following this conference, the Court issued a case management order. (ECF 49.) The Court directed that the parties make their Rule 26(a)(1) initial disclosures in November 2022 and that all discovery be completed by February 23, 2022. The Court also ordered that the parties move to amend the pleadings or add new parties by November 30, 2021.

On November 12, 2021, Gensamer produced to Roland his initial disclosures in accordance with the case management order. (Def's Ex. 1, ECF 62-1 at pp. 2-3.) Roland then submitted his initial disclosures. (Def's Ex. 2, ECF 62-2 at pp. 2-4.) Roland did not produce any documents to Gensamer. (*Id.*) However, during a series of email exchanges with Defense Counsel, Roland

identified two responsive documents that were contained among those documents that Gensamer had produced to him. (Def's Ex. 3, ECF 62-3 at pp. 2-6.) Roland explained that he possessed these two documents *when he was housed in the Blair County Prison*. (*Id.*) One of the documents (Bates numbered Blair 042) is the first page of Roland's prison mail log. This mail log identifies Officer Zachary A. Ritchey—not Gensamer—as the "Handling Officer" of Roland's outgoing July 11, 2019 letter. (Def's Ex. 4, ECF 62-4 at p. 3.)

The Court held a telephone status conference on December 21, 2021. During this conference Roland informed the Court that he wanted to file an amended complaint based on information allegedly supplied to him during discovery showing that Gensamer was not involved in the rejection of his letter. (*See* Minute Entry for 12/21/21 conference.) The Court ordered Roland to file a motion for leave to amend no later than January 11, 2022. (ECF 53.) The Court later extended that deadline to January 28, 2022, and then to February 8, 2022.[2] (ECF 55, 57.) Roland met the latter deadline and pending before the Court is his Motion for Leave to Amend the Complaint. (ECF 58.)

In the proposed amended complaint that Roland attached to his motion, he seeks to add as defendants Ritchey and Deputy Warden James Eckard (collectively, "Proposed Defendants"). (ECF 58-1 ¶¶ 2-3.) Roland also seeks to withdraw his claim against Gensamer and terminate him as a defendant in this case.

Roland alleges in the proposed amended complaint that Ritchey rejected the July 11, 2019

---

[2] Roland submitted an amended complaint on January 28, 2022 without an accompanying motion seeking leave to file it. (ECF 56.) Because Roland did not have authorization to file an amended complaint, the Court directed the Clerk of Court to strike it. The Court also provided Roland with another brief extension and directed that he file a motion for leave to file an amended complaint by February 8, 2022, which he did. (ECF 57.)

4

letter because it was sealed with tape, and that Ritchey read the letter. Ritchey advised Deputy Warden Eckard of the letter's contents. Eckard then made the decision to inform the Hollidaysburg Borough Police Department about the letter. (*Id.* ¶¶ 10-13.) Roland alleges that neither of the Proposed Defendants notified him that his letter had been rejected by the prison, thereby depriving him of the chance to challenge the rejection "to somebody other than the original censor[.]"[3] (*Id.* ¶ 14.) Based on these alleged facts, Roland seeks to bring § 1983 claims against the Proposed Defendants asserting that they violated his right to procedural due process afforded to him by the Fourteenth Amendment.[4] (*Id.* ¶ 4.)

Roland's motion for leave to file an amended complaint is fully briefed. (ECF 59, 62, 68.) In the opposition brief (ECF 62), Defense Counsel explains that she also represents the Proposed Defendants in addition to the originally named defendants (Gensamer, Warden Tate and the Blair County Prison). (*Id.* at p. 10.)

## II.   Discussion

Rule 15 of the Federal Rule of Civil Procedure governs the filing of amended complaints. In relevant part, it provides that at this stage of the litigation Roland may amend the complaint only with leave of court or by written consent of the defendant. Fed. R. Civ. P. 15(a)(2). Whether to grant leave to amend a complaint is within the discretion of the district court. *See, e.g., Mullin*

---

[3] According to Roland, he submitted a grievance in August 2019 in which he challenged the rejection of his July 11, 2019 letter without due process, but that grievance was never answered. (ECF 58-1 ¶ 15.)

[4] The proposed amended complaint also cites the Fifth Amendment as a source of Roland's due process rights. As the Court explained in the opinion it issue on the motion to dismiss previously filed in this case, the Fifth Amendment's due process clause only protects against federal governmental action and is thus inapplicable to this lawsuit, which does not involve any federal employees. *See, e.g., Nguyen v. U.S. Catholic Conf.*, 719 F.2d 52, 54 (3d Cir. 1983).

*v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017). Although leave should be freely granted "where justice so requires," leave may "reasonably be denied" in certain circumstances. *Id.* Under Rule 15(a)(2), "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). Absent prejudice to the non-moving party, denial may be "based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); *see also Mullin*, 875 F.3d at 150-51.

Amendment is futile when the claim or claims sought to be added would be barred by the statute of limitations. *See, e.g., Garvin v. City of Philadelphia*, 354 F.3d 215, 219 (3d Cir. 2003). Roland does not dispute that the claims he seeks to assert against the Proposed Defendants are timebarred under the applicable two-year statute of limitations[5] unless the Court concludes the proposed amendments relate back to the date of the filing of his original complaint under Rule 15(c)(1).

In relevant part, Rule 15(c)(1) provides that when, as is the case here, an amendment changes the party against whom a claim is asserted, the amended pleading relates back to the date

---

[5] Claims such as those that Roland seeks to bring under § 1983 are subject to state statutes of limitation governing personal injury actions. *Garvin*, 354 F.3d at 220. The Pennsylvania statute of limitations for personal injury applicable here is two years. *Id.* (citing 42 Pa. Const. Stat. § 5524(7)). Roland's letter was rejected on July 11, 2019. The Proposed Defendants assert that the statute of limitations began to run on this date and thus expired two years later, on July 11, 2021. Roland does not contest their calculation. The Court also notes that Roland acknowledges that he learned that his letter had been opened and read during the discussion he had with a police officer on July 13, 2019. Roland also admits that he filed a grievance in August 2019 in which he challenged the alleged denial of his procedural due process (*i.e.*, the failure to notify him of his letter's rejection). (ECF 58-1 ¶¶ 7, 15.) Thus, the statute of limitations commenced at the very latest by the time Roland filed the grievance and expired at the very latest in August 2021.

of the original pleading when:

> (1) "the amendment asserts a claim…that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading;"

> (2) the proposed defendant named in the amended pleading "received such notice of the action that it will not be prejudiced in defending on the merits;" and,

> (3) the proposed defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

Fed. R. Civ. P. 15(c)(1)(B), (C). The second and third conditions (set out in Rule 15(c)(1)(C)(i) and (ii), respectively), must be met "within the period provided by Rule 4(m) for serving the summons and complaint[.]" *Id.*[6]

"The relation back provision of Rule 15(c) aims to ameliorate the harsh result of the strict application of the statute of limitations." *Garvin*, 354 F.3d at 220. If the conditions of the Rule are satisfied, "the defendant brought in by amendment will be no worse off, in terms of her ability to defend the action, than if she had been named as a defendant initially." *Silbaugh v. Chao*, 942 F.3d 911, 913 (9th Cir. 2019). That defendant "will have received adequate notice of the action within the period allowed for service of the summons and complaint, and she will have realized (or had a basis for realizing) that the action would have been brought against her but for the plaintiff's inadvertent mistake." *Id.*

---

[6] Effective December 1, 2015, Rule 4(m) was amended to require service of process within 90 days, rather than 120 days, of the filing of the complaint. The discussion in the brief filed in opposition to Roland's motion incorrectly references the prior 120-day deadline. That error is not consequential here because Defense Counsel entered her appearance on behalf of the original defendants within the 90-day period for satisfying Rule 4(m)'s service of process, which was tolled during the Court's screening process. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 799-800 (N.D. Tex. 2005) ("In most instances, the screening process itself constitutes good cause to extend the time for service of process [under Rule 4(m) of the Federal Rules of Civil Procedure.]"). *See also Urrutia v. Harrisburg Cnty. Police Dept.*, 91 F.3d 451, 453-454, 459-60 (3d Cir. 1996).

The plaintiff bears the burden to demonstrate that an amendment relates back to the original complaint under Rule 15(c). *Kitko v. Young*, No. 3:10-cv-189, 2013 WL 126324, at *7 (W.D. Pa. Jan. 9, 2013) (collecting cases), aff'd, 575 F. App'x 21 (3d Cir. 2014). In determining whether relation back should be permitted under Rule 15(c), a district court may consider relevant extrinsic evidence and is not confined to examination of just the pleadings themselves. *See, e.g.*, *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516-18 (6th Cir. 2007).

### A.      The Proposed Amendments Relate Back to the Filing of the Original Complaint Under Rule 15(c)(1) Only As To Ritchey

The procedural due process claims Roland seeks to assert against the Proposed Defendants arose out of the same conduct, transaction or occurrence set forth in the original complaint (the alleged rejection of his July 11, 2019 letter without notification). Thus, the first condition listed above is satisfied.

As for the second condition, it is satisfied if, within the 90-day period provided for service of the original complaint under Rule 4(m), the Proposed Defendants "received such notice of the action that [they] will not be prejudiced in defending on the merits[.]" Rule 15(c)(1)(C)(i). This condition has two requirements: (1) notice and (2) absence of prejudice. *See, e.g.*, *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001).

Notice may be actual or constructive. Relevant here, notice can be imputed to a proposed defendant under the "shared attorney" method. *Id.* at 195. This method of imputing notice "is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.* Thus, when a proposed defendant is represented

8

by the same attorney who represents an original defendant, that permits the inference that the attorney would have, during his or her investigation of the case and within Rule 4(m)'s period for service of the original complaint, provided notice of the action to the proposed defendant. *Id.* at 195-97.

The Proposed Defendants acknowledge that notice of this lawsuit can be imputed to Eckard under the "shared attorney" method.[7] However, they contend that method of imputing notice does not apply to Ritchey because he left the employ of the Blair County Prison on September 2, 2020, which was before the Court had even ordered service of the original complaint. (Def's Ex. 7, ECF 62-7, Affidavit of Katherine W. Swigart.) The significance that the Proposed Defendants place on the date and fact that Ritchey stopped working at the prison is misplaced, however. That Ritchey ended his employment with the Blair County Prison in September 2020 does not negate the inference that Defense Counsel notified him of this action within the period provided by Rule 4(m). Where Ritchey was working during that period is not significant since there is no basis in the record to support a finding that Defense Counsel's ability to communicate with Ritchey was hindered by his employment status.[8] Thus, the Court finds that both Eckard and Ritchey received notice of this action within the relevant period because they share counsel with the original defendants.

---

[7] Roland asserts in the proposed amended complaint that neither Proposed Defendant currently works at the Blair County Prison. (ECF 58-1 ¶¶ 2-4.) The Proposed Defendants explain that contrary to Roland's belief, Eckard is still employed at the prison. (ECF 62 at 10 n.6.)

[8] The only evidence the Proposed Defendants have submitted in support of the argument that notice of this action should not be imputed to Ritchey via the "shared attorney" method is an affidavit confirming Ritchey's last day of employment with the prison. (Def's Ex. 7, ECF 62-7, Affidavit of Katherine W. Swigart.) Since that evidence does not itself rebut the inference that Ritchey would have received notice of this action through Defense Counsel within the relevant period because she was representing him as a former employee of the prison, the inference must stand.

9

As discussed above, Rule 15(c)(1)(C)(i) also contains an absence of prejudice requirement, which is "closely intertwined" with the notice requirement "as the amount of prejudice a defendant suffers under [the Rule] is a direct effect of the type of notice he receives." *Singletary*, 266 F.3d at 194 n.3. "That is, once it is established that the [proposed defendant] received some sort of notice within the relevant time period, the issue becomes whether that notice was sufficient to allay any prejudice the [he] might have suffered by not being named in the original complaint." *Id.* "'[T]he 'prejudice' to which the Rule refers is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale.'" *Garvin*, 354 F.3d at 220 n.6 (quoting *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995)).

Relatedly, Rule 15(c)(1)(C)(ii)'s "knowledge-of-mistake" condition, which is the third condition set forth above, requires that the proposed defendant "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." Unlike Rule 15(c)(1)(C)(i)'s notice requirement, which addresses a prospective defendant's awareness of the original action, the "knowledge-of-mistake" condition address the prospective defendant's awareness that he was not named in the original action because of a mistake concerning his identity. This condition asks "what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing [his] original complaint." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (emphasis in original).

The Court finds that Ritchey's potential involvement would have been obvious to Defense Counsel very early in this case since the mail log identified him as the officer who handled

10

Roland's July 11, 2019 letter. (Def's Ex. 4, ECF 62-4 at p. 3.) Thus, the absence-of-prejudice requirement is satisfied for Ritchey, as is the knowledge-of-mistake condition.

In contrast, the Court finds that Roland has not met his burden of satisfying either of these conditions for Eckard. That is because Roland has failed to explain why he now believes Eckard was involved in the rejection of his July 11, 2019 letter. In the brief Roland filed at the same time as his motion, he asserts generally that he learned of both Ritchey's and Eckard's involvement from documents he obtained during discovery such as "timecards, shift reports and detailed mail logs." (ECF 59 at p. 1.) Roland does not explain how these types of documents show Eckard's involvement in the rejection of his letter without notice, however. For example, Roland's mail log clearly demonstrates Ritchey's involvement since it lists him as the officer who handled the July 11, 2019 letter. (ECF 62-4 at p. 3.) Roland has not directed the Court to any comparable evidence that he obtained in discovery and on which he bases his allegation that Eckard was involved in the events at issue.

In his brief, Roland also refers to "a police affidavit from [his] separate but related criminal case." (ECF 59 at p. 1.) But, importantly, Roland did not produce during discovery the "police affidavit" that he now argues is important to this litigation. (*See* ECF 62 at p. 11; Def's Ex. 3, ECF 62-3 at pp. 2-7.) Nor did Roland attach that police affidavit to his initial brief (ECF 59) or his reply brief (ECF 68), or even describe what the police affidavit contains. In fact, in his reply brief, Roland discusses only why he now understands that Defendant Gensamer was not involved in the rejection of his letter. He does not mention or discuss Eckard (or Ritchey, for that matter).

Simply put, Roland has not directed the Court to any evidence to show that Eckard knew or should have known of his probable future status as a defendant within the Rule 4(m) period.

Thus, while Eckard may have received notice of this lawsuit (actual or constructive) during that period, there is no basis for the Court to conclude that the type of notice he received eliminated any prejudice that he would incur if added as a defendant outside the statute of limitations, or that Eckard knew or should have known during that period that he would have been sued but for a mistake concerning his identity.

Accordingly, relation back under Rule 15(c) is satisfied only with respect to Ritchey. As for Eckard, there is no relation back and thus it would be futile to permit Roland to file the proposed amended complaint naming him as a defendant since the claim Roland wants to bring against him is time-barred. Therefore, Roland's motion for leave to amend is denied with respect to Eckard for this reason.

### B. Rule 15(a) and Roland's Undue and Unexplained Delay In Bringing His Claim Against Ritchey and Eckard

Under Rule 15, the decision whether to allow a plaintiff to amend the complaint under Rule 15(a) is separate from, and based on a different standard than, the decision whether the claim relates back to the original complaint under Rule 15(c). *See, e.g.*, *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202-03 (3d Cir. 2006). Thus, while Roland's proposed amended complaint meets the requirements of Rule 15(c) for Ritchey, the Court may still deny leave to amend under Rule 15(a). *Id.* at 203; *Wine v. EMSA Ltd. Partnership*, 167 F.R.D. 34, 39 (E.D. Pa. 1996) (holding that the proposed amended related back under Rule 15(c) but denying leave to amend under Rule 15(a)). Similarly, although the Court has concluded that Roland's motion to amend should be denied with respect to Eckard under Rule 15(c), the Court may alternatively deny leave to amend under Rule 15(a) as well.

As discussed above, leave to amend under Rule 15(a)(2) should be granted whenever

"justice so requires." Fed. R. Civ. P. 15(a)(2). This standard encompasses a broad range of equitable factors, including a party's undue delay in seeking leave to amend, bad faith or dilatory motives, or that the amendment would prejudice the non-moving party.[9] *Foman*, 371 U.S. at 182.

The Proposed Defendants argue that the Court should deny Roland leave to amend under Rule 15(a) because of his unexplained delay in moving to amend the complaint to assert claims against them.[10] (ECF 62 at pp. 14-16.) The Court of Appeals has explained:

> The "undue delay" factor recognizes that a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend. While simple delay cannot justify denying leave to amend by itself, delay that is "undue"—a delay that is protracted and unjustified—can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretional denial of leave. *As there is no presumptive period in which…delay becomes "undue," the question of undue delay requires that we focus on the movant's reasons for not amending sooner while bearing in mind the liberal pleading philosophy of the federal rules. Following this principle, we have refused to overturn denial of motions for leave to amend where the moving part offered no cogent reason for the delay in seeking amendment.*

*Mullin*, 875 F.3d at 151 (internal citations and quotations omitted) (emphasis added).[11]

---

[9] The non-moving party bear the burden of demonstrating prejudice sufficient to deny leave to amend under Rule 15(a)(2). *See, e.g.*, *Kitko*, No. 3:10-cv-189, 2013 WL 126324, at *7. Absent a showing a prejudice, leave to amend may still be denied under Rule 15(a)(2) for another equitable reason, including unexplained delay. *Id.* (citing *Lorenz*, 1 F.3d at 1414.)

[10] The Proposed Defendants also argue that amendment would be futile because Roland cannot state a plausible due process claim against them. Therefore, they argue, the proposed amended complaint would not survive a motion to dismiss under Rule 12(b)(6). (ECF 62 at pp. 17-21.) In support of this argument the Proposed Defendants rely on documents that were not attached to the proposed amended complaint. Thus, the Court cannot consider this evidence and, accordingly, the Court will not discuss this argument further. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.)

[11] Under Rule 15(a) a court may properly deny leave to amend a complaint when a party has engaged in undue delay without explanation. However, undue delay plays no role in evaluation of
*Footnote continue on next page…*

It is undisputed that before Roland left the Blair County Prison on February 22, 2021 he had obtained a copy of his mail log which identified Ritchey as the officer who handled his July 11, 2019 letter. (Def's Ex. 3, ECF 62-3 at pp. 2-7; Def's Ex. 4 at 3.) Thus, Roland had the necessary information by that date, if not sooner, to move to file an amended complaint that named Ritchey as a defendant. He did not do so. Instead, Roland waited approximately eleven months after his release before he moved to file the proposed amended complaint.

Roland does not explain why he waited so long to move to amend the complaint to assert his claim against Ritchey. He does not discuss Ritchey in his reply brief (ECF 68) or address why he did not move to amend his complaint to add Ritchey as a defendant after he obtained his mail log, let alone by the original November 30, 2021 deadline to move to amend. Roland's failure to explain why he did not move to amend earlier to assert his claim against Ritchey amounts to "undue" delay justifying the denial of his motion as to Ritchey. *See, e.g.*, *Kitko*, No. 3:10-cv-189, 2013 WL 126324, *at* \*8 (denying leave to amend under Rule 15(a)(2) because plaintiff had numerous prior opportunities to amend but failed to do so and proffered no justification for his failure); *Wine*, 167 F.R.D. at 39-40 (same). As the Court of Appeals has explained, although "[d]elay alone is not sufficient to justify denial of leave to amend[,]" "at some point,… delay will become 'undue,' placing an unwarranted burden on the court…[and] an unfair burden on the opposing party." *Arthur*, 434 F.3d at 204 (internal quotations and citation omitted). When, as is the case here, "a party fails to take advantage of previous opportunities to amend, *without adequate explanation*, leave to amend is properly denied." *Id.* (emphasis added).

---

relation back under Rule 15(c). *Krupski*, 560 U.S. at 548-50; *Arthur*, 434 F.3d at 203 ("Undue delay is a reason to deny leave to amend but not to deny relation back.") (internal quotations and citations omitted).

As for Eckard, Roland has not even explained why he now believes Eckard was involved in the events at issue in this case, let alone why he did not or could not assert his claim against Eckard earlier. As the Proposed Defendants point out, if Roland learned of Eckard's alleged involvement because of information in a police affidavit submitted in his criminal case, Roland was obligated to produce that document in discovery in the instant case. He did not do so. As is the case with Ritchey, Roland's failure to offer any explanation as to why he did not move to assert his claim against Eckard earlier results in a finding of undue delay.

Accordingly, Roland's motion for leave to amend the complaint is denied with respect to Ritchey and Eckard under Rule 15(a) because of his unexplained delay in moving to bring his claims against them.

### III.    Conclusion

Based on the foregoing, the Court will deny Roland's Motion for Leave to Amend the Complaint (ECF 58.)

An appropriate Order follows.

Dated: August 31, 2022                                    BY THE COURT:

                                                          /s/ Patricia L. Dodge
                                                          PATRICIA L. DODGE
                                                          United States Magistrate Judge

15